# CIRRUS
## REAL ESTATE PARTNERS

The following summary of indicative terms and conditions is intended for discussion purposes only. This document is neither an expressed nor implied commitment by Lender or any of its affiliates to provide any financing, to provide or purchase any loans or securities in connection with the transactions contemplated hereby or to provide or assist in providing the financing described herein, which commitment, if any, shall only be as set forth in a separate commitment letter or other applicable type of agreement. Any such commitment will be subject to, among other things, satisfactory transaction structure and documentation, receipt of appropriate internal approvals and other standard conditions for transactions of this type. This summary of indicative terms and conditions does not purport to summarize all the terms, conditions, representations, warranties and other provisions with respect to the transactions referred to herein.

| | |
|---|---|
| **Borrower:** | 560 Seventh Avenue Owner Primary, LLC (the "**DIP Borrower**"), as a debtor and debtor in possession under Chapter 11 of the Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "**Bankruptcy Code**") |
| **Lender:** | Cirrus REP Funding LLC and/or affiliates thereof ("**Cirrus**"). |
| **Property:** | The DIP Loan (*as defined below*) shall be secured by the property which is a 155,042 GSF building comprised of (i) 234 hotel keys and (ii) 34,271 NRF of retail at the address below together with all improvements and personal property located thereon, and all associated rights, entitlements, architectural and development plans with respect thereto (collectively with the Improvements, the "**Property**" or the "**Project**"):<br>  i.   560 7th Avenue, New York, NY. |
| **Purpose:** | The proceeds of the DIP Loan shall be used to (i) repay the existing senior mortgage loan (ii) fund general working capital, and (iii) fund operational expenses and restructuring expenses of the DIP Borrower. |
| **DIP Loan Amount:** | The lesser of (i) $170,000,000, and (ii) an amount which equals 65% loan-to-value (as stabilized) as reasonable determined by Cirrus in aggregate (the "**DIP Loan Amount**" or "**DIP Loan**"). |
| **Cash Equity:** | Borrower shall have a minimum of $65,000,000 in cash equity at or prior to closing. |
| **Term:** | 12 months ("**Initial Term**"), with one (1) 3-month extension (the "**Extension Term**"), subject to the satisfaction of the Extension Conditions. |
| **Current Interest Rate:** | SOFR + 6.00%, subject to a 1-Month TERM SOFR Floor of the then prevailing 1-Month TERM SOFR at closing; interest is calculated on an actual/360 basis. |
| **Accrued Interest Rate:** | 2.75%; interest is calculated on an actual/360 basis.<br><br>The sum of the (i) Current Interest Rate and (ii) Accrued Interest Rate shall be the "**Interest Rate**". |
| **Debt Yield Test:** | To be tested at closing and December 31, 2023 |
| **Extension Conditions:** | The Extension Terms shall be conditioned on the following:<br>  i.   No event of default existing; |

|  |  |
|---|---|
|  | ii. TTM debt yield of [8.25]%;<br>iii. Payment of an extension fee of 1.00%;<br>iv. Loan-to-value ratio no greater than 60%;<br>v. Replenishment of reserves;<br>vi. No material adverse change in Borrower or Properties; and<br>vii. Other customary conditions for a transaction of this nature. |
| **Prepayment:** | Can be prepaid in whole but not in part (other than in connection with the sale of any property comprising the Additional Collateral), subject to make-whole through the twelfth (12) payment date on the Loan Amount excluding origination fees, extension fees, exit fees, and default interest. |
| **Guarantor(s):** | Sharif El Gamal, Andrew Weiss and Stephen "Chip" Weiss, on a joint and severally basis, subject to Cirrus' sole approval.<br>ss |
| **Guarantees:** | The Guarantor(s) shall jointly and severally provide the following guarantees<br><br>i. Environmental;<br>ii. Operating / Carry Costs;<br>iii. Debt Service; and<br>iv. Customary Non-recourse Carve-out Guarantees. |
| **Guarantor Net Worth and Liquidity:** | Prior to Loan closing the Guarantors shall evidence an aggregate minimum net worth in excess of $100,000,000, excluding the Property, and minimum aggregate liquidity of $15,000,000 based on assets and bank accounts within the United States of America. |
| **Project Monitor:** | Cirrus will hire, at Borrower's expense, a project monitor in order to monitor property performance. |
| **Subordinate Debt:** | None permitted, with the exception of the existing mezzanine loans. |
| **Origination Fee:** | 1.00%. |
| **Exit Fee:** | 1.00%. |
| **Good Faith Deposit:** | $150,000. |
| **Processing Fee:** | $32,500 earned concurrent with term sheet execution. |
| **Break-Up Fee:** | 3.00% of the Loan Amount, in addition to liquidated damages and foregone interest, in the case that Borrower procures equity or debt financing in-lieu of the Loan after signing the term sheet. |
| **Collateral:** | The DIP Term Facility (a) will be entitled to super priority claim status pursuant to Section 364(c)(1) of the Bankruptcy Code and (b) will be secured by a fully perfected security interest pursuant to Section 364(c)(2) and Section 364(d)(1) of the Bankruptcy Code. |

**CIRRUS**
REAL ESTATE PARTNERS

| | |
|---|---|
| **Lender Approval:** | The shall obtain Lender approval for a major contracts including any Collective Bargaining Agreements. |
| **Cash Flow Sweep:** | After payment of debt service on the DIP Loan, all excess cash flow shall be swept by Lender and held as collateral for the DIP Loan in a Lender-controlled account. |
| **Closing:** | September 30, 2023. |

**THIS IS NOT A COMMITMENT, CONTRACT NOR AN OFFER BY CIRRUS OR ANY OF ITS AFFILIATES TO INVEST IN THE DIP LOAN OR MAKE A DIP LOAN, AND SHALL NOT OBLIGATE CIRRUS OR ANY OF ITS AFFILIATES IN ANY MANNER WHATSOEVER.  THE TERMS OF ANY PROPOSED FINANCING ARE SUBJECT TO, AMONG OTHER THINGS, CIRRUS' SATISFACTORY COMPLETION OF ITS DUE DILIGENCE INVESTIGATION, CIRRUS' INTERNAL CREDIT APPROVAL AND THE EXECUTION AND DELIVERY BY BORROWER AND CIRRUS OF DEFINITIVE DIP LOAN DOCUMENTS IN FORM AND SUBSTANCE ACCEPTABLE TO CIRRUS.  NO VERBAL STATEMENTS TO BORROWER OR OTHER PARTIES CONCERNING THE PROPOSED LOAN BY ANY EMPLOYEE, AFFILIATE, OR AGENT OF CIRRUS SHALL HAVE ANY BINDING EFFECT AND CIRRUS SHALL HAVE NO OBLIGATION TO BORROWER OR ANY OF ITS AFFILIATES TO INVEST IN THE DIP LOAN EXCEPT TO THE EXTENT SET FORTH, IF AT ALL, IN A WRITTEN COMMITMENT FOR THE DIP LOAN ISSUED BY CIRRUS OR ITS AFFILIATES.  EXECUTION AND ACCEPTANCE OF THIS LETTER AND PRESENTATION OF THE PROPOSED SUMMARY OF TERMS DOES NOT IMPLY, IN ANY WAY, A COMMITMENT OR OFFER TO FINANCE, BUT RATHER A PROPOSAL BY CIRRUS TO PROCEED WITH ITS DUE DILIGENCE INVESTIGATION AND SEEK A FORMAL CREDIT REVIEW.**

**Exhibit A**

| DIP Uses | |
|---|---|
| OWS net payoff | $ 155,425,130 |
| Loan Reserves | $ 6,450,000 |
| Closing Costs | $ 2,700,000 |
| Working capital | $ 5,424,870 |